## St. Louis Press Brick Co. v. Warren Kenyon.

1. PERSONAL INJURIES—*The Result of One's Own Negligence.*—Where
it is the duty of one of two fellow-servants to notify the other before
performing a dangerous service, and he fails to do so, and is injured in
consequence of such failure, such injury is the result of his own negli-
gence and he can not recover from the common master.

2. MASTER AND SERVANT—*Liability for Incompetent Servants—Bur-
den of Proof.*—To charge a master with the negligence of a fellow-serv-
ant on the ground that the servant is incompetent, two things must
concur; the servant must be incompetent and the master must have
notice. In such cases the burden of showing negligence in selecting or
retaining incompetent servants is on the plaintiff.

3. FELLOW-SERVANTS—*Incompetency—Notice to Master.*—Where a
person continues to work with an incompetent man without giving
notice to the common master, and is injured in consequence of such in-
competency, he can not maintain an action for damages.

**Memorandum.**—Action for personal injuries. In the Circuit Court of
Madison County; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding.
Trial by jury; verdict and judgment for the plaintiff; appeal by the
defendant. Heard in this court at the August term, 1893, and
reversed and remanded. Opinion filed September 11, 1894.

APPELLANT'S BRIEF, A. & J. F. LEE, C. L. COOK AND TRAVOUS
& WARNOCK, ATTORNEYS.

Appellant contended that there was no evidence of any
negligence whatever on the part of the defendant, and the

St. Louis Press Brick Co. v. Kenyon.

burden of proof was on the plaintiff to establish it.   Barkley v. Railroad, 37 Ill. App. 293; Railroad v. Jones, 75 U. S. 439; Q., A. & St. L. R. R. Co. v. Wellhoener, 72 Ill. 60; I. & St. L. R. R. Co. v. Evans, 88 Ill. 63; Ortmayer v. Johnson, 45 Ill. 469; C., B. & Q. R. R. Co. v. Abend, 7 Ill. App. 130; Penna. Co. v. Lynch, 90 Ill. 333.

The duty of defendant was only to supply machinery and appliances reasonably safe, not such as were absolutely safe. C., B. & Q. R. R. Co. v. Avery, 109 Ill. 314; Kranz v. White, 8 Ill. App. 583; Camp Point Mfg. Co. v. Ballou, 71 Ill. 417; Richardson v. Cooper, 88 Ill. 270; Friel v. Citizens Ry. Co., 32 S. W. Rep. 498.

The absence of the oil pipes was not the proximate cause of the injury, and no recovery can be had for their absence. Shearman & Redfield on Negligence, 4th Edition, Vol. 1, Section 36; C. & A. R. R. Co. v. Becker, 72 Ill. 25; Cooley on Torts, p. 69; Bishop on Non-contract Law, Sec. 43.

If the injuries were received through the negligence of the fellow-servant, as alleged in the declaration, the plaintiff can not recover.   Honner v. Ill. Central R. R., 15 Ill. 550; Springfield Iron Co. v. Gould, 11 Ill. App. 439; Stafford v. C., B. & Q. R. R. Co., 114 Ill. 245; U. S. Rolling Stock Co. v. Wilder, 116 Ill. 105.

The injuries received by plaintiff were due to his contributory negligence, established by his own testimony, and that of all the witnesses, which bars his recovery.   C. & N. W. Ry. Co. v. Clark, 2 Ill. App. 116; C., B. & Q. R. R. Co. v. Colwell, 3 Ill. App. 545; P., C. & St. L. R. R. Co. v. Goss, 13 Ill. App. 619; Burling v. I. C. R. R. Co., 85 Ill. 18; C., B. & Q. R. R. Co. v. Sykes, 1 Ill. App. 520; Aurora Branch R. R. Co. v. Grimes, 15 Ill. 585; Ortmayer v. Johnson, 45 Ill. 469; Hensler v. Williams, White & Co., 28 Ill. App. 584; Starne, Dresser & Co. v. Schlothane, 21 Ill. App. 97; Sinclair v. Berndt, 87 Ill. 174; Glover v. Gray, 9 Ill. App. 329; Blanchard v. L. S. & M. S. R. R. Co., 126 Ill. 416; C., R. I. & P. R. R. Co. v. Eininger, 114 Ill. 79; I. C. R. R. Co. v. Lear, 26 Ill. App. 356; W., St. L. & P. R. R. Co. v. Thompson, 15 Ill. App. 117; Garfield Mfg. Co. v. McClean, 18 Ill. App. 447; T., St.

L. & K. C. R. R. Co. v. Cline, 31 Ill. App. 563; St. Louis & Southern Ry. Co. v. Britz, 72 Ill. 256; C. & N. W. R. R. Co. v. Thompson, 11 Ill. App. 631; Allerton Packing Co. v. Eagan, 86 Ill. App. 253; T., P. & W. Ry. Co. v. Riley, 47 Ill. 514; I. C. R. R. Co. v. Baches, 55 Ill. 279; C. & A. R. R. Co. v. Murray, 62 Ill. 326; Bloomington v. Reed, 2 Ill. App. 542. Abend v. T. H. & I. R. R. Co., 11 Ill. 202; C. & N. Ry. Co. v. Bliss, 6 Ill. App. 411; C. & A. R. Co. v. Jacobs, 63 Ill. 178; T. W. & W. Ry. Co. v. Jones, 76 Ill. 311; G. & C. U. R. R. Co. v. Fay, 16 Ill. 558; C., B. & Q. R. R. Co. v. Dewey, 26 Ill. 255; C., B. & Q. R. R. Co. v. Hazard, 26 Ill. 373; C. & M. R. R. Co. v. Patchin, 16 Ill. 198.

Appellee's Brief, Hadley & Burton, Attorneys.

It was the duty of the St. L. Press Brick Co. to provide suitable and safe machinery, reasonably well adapted to perform the work to which it was devoted, without endangering the lives and limbs of its servants. This was a continuing duty and it was bound not only to provide safe machinery, but was bound to keep the same in proper repair and working order, and for omission of its duty it is liable to appellee for injury caused by such negligence. C. & A. R. R. Co. v. Shannon, Admr., 48 Ill. 344; I. C. R. R. Co. v. Phillips, 49 Ill. 237; C. & N. W. R. R. Co. v. Sweet, Admr., 45 Ill. 202; T. W. & W. Ry. Co. v. Ingraham, 77 Ill. 314; T. W. & W. Ry. Co. v. Fredericks, 71 Ill. 296; C. & N. W. Ry. Co. v. Taylor, 96 Ill. 465–8; C. & A. R. R. Co. v. Sullivan, Admrx., 63 Ill. 295; C., B. & Q. R. R. Co. v. Avery, 109 Ill. 314; Tudor Iron Works v. Weber, 31 Ill. App. 313; C. & E. I. R. R. Co. v. Hines, 33 Ill. App. 276; Ames & Frost Co. v. Stachurski, 34 N. E. Rep. 48.

Mr. Justice Scofield delivered the opinion of the Court.

Warren Kenyon, the appellee, a young man eighteen years of age, was, on January 14, 1893, seriously injured by having his right arm caught and crushed in the gear-wheel of pressed brick machine No. 5, belonging to appellant, for

whom he was working at the time. He had been in the employment of appellant for about one year preceding the accident, during five months of which time it was his duty to oil four large brick machines. He was engaged at this work on the day when he was hurt.

It appears from the evidence, that each machine was attended by a man called an " off-bearer," who was required to remove a truck loaded with brick a short distance from the machine, and then to return the empty truck for re-loading. Such " off-bearer " set in motion and stopped the machine when he desired, by means of a lever intended for that purpose.

It also appears that there were two men, called operators, or machinists, who had immediate charge of all the machines, and whose duty it was to keep them in repair and proper condition for making good brick. At the time of the accident, neither of these men was present, one of them being at home sick, and the other in attendance on his sick father. The evidence further shows that these machines were at first furnished with oil pipes, extending from a point near the top of the machine down to that portion of the interior which appellee was attempting to oil at the time of the injury. The oil pipe on machine No. 5 was removed several days before the injury, by appellee himself, by authority, as he says, of one of the machinists, but without such authority, as appellants claim. The oil pipes on machines 3 and 4 were removed by the machinists at about the same time, for the reason that the oil congealed, or rather became thickened, so that it would not run down the pipes readily, and so failed to properly lubricate the machinery. There is a dispute as to the cause of the removal of the oil pipes from machine No. 5.

Appellee says that this pipe was gummed with dirt, and that the machinist told him to take it out, and promised to replace it with a clean one.

The machinist swears that he did not tell appellee to take this pipe out, and did not know that it had been removed till some time afterward. The evidence shows that the pipe

could have been removed, cleaned and replaced within a few minutes and that it was the oiler's duty to do this. However, pipes were put on the machines within a short time after the accident.

With the oil pipe on the machine, that portion of the machinery which appellee was attempting to oil when he was injured, could be oiled with safety while the machine was in operation. Without the oil pipe the machine must be stopped, and the oiler must put his arm through one of the apertures of a large wheel, spoken of as the gear-wheel, in order to oil the interior part of the machine. This was indeed a very dangerous undertaking. If the machine should be set in motion while the oiler's arm was in this position, the loss of the arm was almost inevitable. Before the pipes were removed appellee had been informed by some one of those in charge that the "off-bearer" would stop the machine for him at any time, on request, if he desired to oil it, and had been warned to be careful in oiling the machine and to have the "off-bearer" at the loose wheel, to hold the machine while he oiled it. These instructions were not repeated after the removal of the oil pipes. Sometimes appellee stopped the machine himself for the purpose of oiling it, as it appears he had the right to do.

The machine had been set in motion by the "off-bearer" just before the accident, and then stopped by him, as he claims, just before appellee went to it. Appellee claims, however, that he stopped the machine for the purpose of oiling it. This contradiction is not very material, as each knew the other was somewhere about the machinery. Appellee says that he called out to the "off-bearer" that he was going to oil his machine; that the "off-bearer" made no reply. The "off-bearer" swears he did not hear what was said, and appellee does not swear positively that he spoke so as to be heard. While appellee was oiling the machine in the position above indicated, the "off-bearer," not knowing the fact, although he could have seen appellee if he had looked, started the machine, which crushed appellee's right arm so that it was necessary to amputate it near the shoulder.

On trial of this case in the court below appellee recovered a judgment for $5,000.

The declaration contains five counts. The first count alleges that appellant negligently failed to provide reasonably safe machinery and to keep the same in proper repair. The second count alleges that appellants negligently failed to keep the machine supplied with an oil pipe in good condition, proper repair and working order, but suffered the same to be taken from said machine. The third count alleges that appellants did not provide capable servants to operate the machinery, and that appellee was injured through the negligence of Pat Dooner, an incapable, incompetent and careless employe. The fourth count alleges that appellants did not warn appellee, a minor, of the danger of his work, and did not instruct him as to the proper manner of oiling the machine. The fifth count alleges that appellants did not provide a sufficient number of capable servants to operate the machinery.

The evidence shows that this unfortunate occurrence resulted from the negligence of some one; from the negligence of appellants in not furnishing safe machinery, or of their servant, Pat Dooner, the " off-bearer," in starting the machine when appellee was oiling it, or of appellee in not satisfying himself that Dooner knew what was being done, before putting his arm into this dangerous place. It may be said that the accident would not have occurred if the machine had been furnished with an oil pipe. Neither would it have occurred if Dooner had not started the machine, or if appellee had exercised due care for his personal safety. It is equally certain that appellee's arm would not have been crushed on this occasion if appellants had never engaged in making brick, or if appellee had never undertaken to oil machines. The question is not what may have led to the accident, however remotely or circuitously, but what was the proximate cause.

Appellee knew that the oil pipe was gone. He knew that if the machine was started while his arm was thrust through an aperture of the gear wheel, his arm would be crushed.

He knew that the position was an exceedingly hazardous one. It was not necessary for a skilled machinist to tell him that.

The danger was apparent even to a minor, eighteen years of age. The failure to provide an oil pipe did not leave appellee exposed to a danger which was hidden—which could not be foreseen and provided against. If appellee continued this perilous service on the faith of the promise to furnish a new oil pipe, he does not furnish proof of that fact. Under the circumstances it was his duty to notify Dooner that he was about to oil the machine, and to give this notice in such a manner that Dooner could not misunderstand or fail to hear.

Not having done this, appellee's injury was the result of his own negligence.

It may be affirmed also that the injury resulted from Dooner's negligence. It is admitted that Dooner was appellee's fellow-servant, and that appellants are not liable for his negligence, unless he was incapable and incompetent. But to charge the master in such case two things must concur: the servant must be incompetent and the master must have notice thereof. C. C. & I. C. R. W. Co. v. Troesch, 68 Ill. 545; C. & E. I. R. R. Co. v. Geary, 110 Ill. 383. In such case the burden of proof to show negligence in selecting or retaining incompetent servants is on the plaintiff. Stafford v. C. B. & Q. R. R. Co., 114 Ill. 244. The evidence tending to show Dooner's incompetency is very slight; but if he was incompetent, there is no evidence in the record to charge appellants or any foreman or vice-principal with notice thereof. If appellee had seen Dooner's alleged sleepy appearance, he should have notified the proper authorities. This he did not do. On the contrary, he continued to work with an incompetent man, as he claims, without giving notice to his master, and should not be permitted now to maintain his action on account of Dooner's alleged incompetency.

Upon a careful examination of the record, we think that appellee's injury resulted from his own negligence and the negligence of his fellow-servant, for which the master was

in nowise responsible, and that the failure to supply the machine with an oil pipe was not the proximate cause of the injury. In this view of the case, the evidence does not support the verdict.

The judgment is reversed and the cause is remanded.

MR. JUSTICE SCOFIELD ON REHEARING.

In view of the facts as stated in the former opinion herein, the correctness of which has been ascertained by a careful and thorough re-examination of the record, we see no good reason for granting a rehearing of this cause, but are still of the opinion that the judgment of the lower court should be reversed and that the cause should be remanded.

It was not the intention of the court, in the former opinion herein, to deprive appellee of a full and fair re-trial of the case before a jury. If such had been the object of the opinion, the cause would not have been remanded, but a judgment of reversal would have been rendered, finally disposing of the controversy except as an appeal might have been taken to, or writ of error sued out from, the Supreme Court, to review our decision.

But the opinion strongly intimates that a judgment in appellee's favor could not be sustained under any circumstances. This is more than we desire to affirm. We can see how the case on either side might be materially strengthened on another trial, with full opportunity to the parties to profit by the mistakes and omissions of the former trial. We think that the record before us does not justify the verdict, and that the ends of justice demand that the cause should be submitted to another jury, but we do not feel justified in reversing without remanding.

Therefore the opinion heretofore filed is hereby modified, in so far as it holds that appellee's injury was the result of his own negligence so as to bar a recovery *in any event*, or that the failure of appellant to supply the machine with an oil pipe could not be considered as the proximate cause of the injury *under any circumstances.*

With the opinion thus modified, the petition for a rehearing is denied.